IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Case No. 1:23-cv-00178-JAO-RT |
| | (Copyright) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF SUPPORT** |
| JOHN DOE subscriber assigned IP address 75.85.3.187, | |
| Defendant. | |

**MEMORANDUM OF SUPPORT**

**I.   SUMMARY**

Each of the *Fogerty Factors*, (*Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994), weighs in John Doe's favor.  In particular, Strike 3 had no objective reasonable basis to bring this suit (fourth factor).  Even a non-expert analysis of Strike 3's "Additional Evidence" files) shows a person (more likely persons) who downloaded multiple terabytes of data and speaks numerous foreign languages.  Strike 3 had this evidence prior to filing suit, then chose to file suit anyway, and when they got John Doe's identity, Strike 3 cherry picked the "Additional Evidence" to give the impression that John Doe was the serial infringer. (ECF 14).

Strike 3 never found a single piece of direct evidence that John Doe infringed on any of John Doe's media. (see Paige Expert Report).  That is because Strike 3

knew early on he was not the infringer. Instead, Strike 3 persisted to try and squeeze a monetary settlement.

John Doe did not have the money to pay five figures. Luckily, Hawaii Legal Aid was able to help him with his problem, completely in his favor.

As John Doe prevailed in this case and each of the *Fogerty Factors* weighs in his favor, he respectfully asks for an award of attorney fees and costs in the amount of $ 85,612.75 and costs in the amount of $ 2,158.86.

## II. JOHN DOE IS THE PREVAILING PARTY

Strike 3 stipulated to dismissal with prejudice making John Doe the prevailing party. (ECF 57). *In Re Personalweb Technologies LLC,* 85 F. 4th 1148, 1155 (Fed. Cir. 2023); *Buckhannon Board & Care Home vs. West Virginia Department of Health and Human Resources, et. al*, 532 U.S. 598, 604 (2001).

## III. RELEVANT FACTS

On April 17, 2023, Strike 3 alleged that it used in in-house developed computer system "VXN" to detect infringements (ECF 1). Strike 3 alleged that John Doe downloaded 25 movies. (ECF 1-1).

On April 5, 2023, Strike 3 moved for the identity of "John Doe". (ECF 8). This motion was supported by the sworn declarations of Emilie Kennedy, Susan Stalzer, Patrick Paige, and David Williamson.

On May 17, 2023, this Court granted Strike 3's motion for the ISP to release the subscriber's identity subject to a protective order.

On October 14, 2024, Strike 3 filed an amended complaint. (ECF 14). Strike 3 alleged that certain "additional evidence" allegedly "connected" John Doe to the infringements. Oddly, Strike 3 redacted this information from their amended complaint despite the fact that the descriptors are completely inoffensive.

On November 3, 2023, John Doe contacted Strike 3's counsel explained that he had "Open Wifi". (Ex. 1). Strike 3's response *was not* to discuss the exculpatory evidence pertaining to open wifi (which may explain the foreign language titles in the "additional evidence"). Nor did Strike 3 ask if John Doe spoke at least: Mandarin, Russian, French. Rather, Strike 3 simply made a five figure monetary demand for settlement. *Id.*

On April 22, 2024, Strike 3 served their initial disclosures. (Ex. 2). Strike 3 did not disclose IPP as a source of infringement information despite IPP being in their "Additional Evidence" file. Strike 3's failure to disclose was contrary to their obligations under F.R.C.P. §26(a)(1)(i)(ii).

On October 7, 2024, Strike 3 failed to serve their expert reports, instead moved for an extension of time. The Court granted the additional time. Two expert reports were served on John Doe: Jorge Arco (Ex. 3) and Patrick Paige (Ex. 4). Neither report concluded from the evidence what was in Strike 3's possession that John Doe

downloaded the 25 works. Also neither report addresses either BATES 5 or BATES 13, the two "Additional Evidence" files prepared by in-house counsel Jessica Fernandez.

The Court set a settlement conference for October 31, 2024. (ECF 47). Strike 3 filed a motion to compel on the same day. (ECF 52).

John Doe served two offers of judgment during the course of the litigation. (Ex. 6 and Ex. 7). Strike 3 did not accept these offers of judgment.

## IV. ARGUMENT

The Ninth Circuit's reversal of a non-award of attorney fees in *Tresona Multimedia vs. Burbank High School Vocal* 953 F.3d 638,653 (2020) ("Tresona") relied upon five-factors[1]. *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). As stated in *Tresona*:

> "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Substantial weight should be accorded to the fourth factor.
>
> *Shame On You*, 893 F.3d at 666.

---

[1] (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) [objective] reasonableness of [the] losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence

Ultimately, any decision by the Court is reviewed under the abuse of discretion standard. *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018). *Strike 3 Holdings v. Doe*, 20-35196, pp 5 (9th Cir. 2021).

None of these factors are determinative and left to the Court's discretion. *Assessment Technologies of WI, LLC v. Wiredata*, 361 F. 3d 434, 436 (7th Cir 2004) citing to *Berkla v. Corel Corp.,* 302 F. 3d 909,923 (9th Cir. 2002).

A.  **Degree of Success Obtained**

John Doe was the prevailing party and obtained complete success. See § 2 above. This factor weighs in favor of John Doe.

B.  **Frivolousness**

The Seventh Circuit recently analyzed the "frivolousness" element finding that a claim is frivolous under *Fogerty* when:

> *"...* the losing party's motivation in filing or contesting the action was questionable, including because of a multiplicity of suits or improperly joined parties…" *Live Face on the Web v. Cremation Society of Illinois*, 77 F. 4th 630, 634 (2023)

Since the Ninth Circuit cautions against simply focusing on Strike 3's 10,000+ lawsuits, as the sole evidence of frivolousness. *Glacier Films (USA), Inc. v. Turchin*[2] 896 F. 3d 1033, 1045. The *Glacier* court did not say this could not be used as

---

[2] Notably, defendant Turchin was not the prevailing party and admitted infringement.

evidence for this factor, as did the Seventh Circuit, rather it cannot be the sole piece of evidence in making a determination.

In this case the "Additional Evidence" and Strike 3's expert reports demonstrate that Strike 3 claims were frivolous. Prior to filing suit one would clearly question the wide variety of works emanating from a single IP address as indicating a sole infringer. This would suggest either "Open Wifi" or a system for detecting infringements that is clear flawed. Also, Strike 3's expert's reports failed to do what experts are supposed to do: connect John Doe to the infringement premised on certain assumptions. Instead, there is not a single opinion in the report how John Doe (or even a member of John Doe's family) downloaded any of the 25 works. There is no analysis of any of Strike 3's data by their experts how John Doe infringed. Instead the experts simply talk about how good Strike 3's computer systems are, a point completely contradicted by two differing data sets. As noted by Dr. Fruits, if the IPP data and the Strike 3 data does not tell the same story, who do we believe?

This is not the first time that Strike 3 and IPP have played games with their data analysis. See Judge Zilly's summary judgment ruling in *Strike 3 Holdings vs. John Doe* (73.225.38.130), 17-cv-1731 (W.D. WA 1-31-2020).

This case is the same as *Turchin* but with the roles reversed. Instead of defendant making frivolous affirmative defenses, here, Strike 3 made frivolous "data names the infringer" assertions in their amended complaint. *See* Fruits declaration.

This factor weighs in John Doe's favor.

### C. Motivation

Strike 3's demonstrated "improper motivation" when John Doe emailed Strike 3's counsel that he had "open wifi" and his internet was configured by prior owners. Rather than follow up on this, with perhaps asking for user manuals of John Doe's network or simple ask for a calendar of when John Doe was not at his home. Instead, Strike 3 simply responded by requesting all of John Doe's financial information and a requested offer for a settlement that exceeded a minimum of $ 18,750.00.

Lawsuits, by and large, are expensive endeavors for both sides. John Doe, *pro se* raised the issue of liability which would have solved the problem for both sides early on.

Also, in Strike 3's motion for early discovery, Strike 3 stated that it "sends 50,000 DMCA notices per month". (ECF 8-2, ¶31). But nowhere does Strike 3 says that they send the DMCA notices to the IP addresses of the alleged infringers. See Expert reports of Arco and Paige. Sending DMCA notices to the IP addresses to the ISP's (who would send them to the subscriber) would help curb "rampant infringement". *BMG Rights Management (US) LLC, et. al vs. Cox Communications,*

*Inc. et. al*, 881 F.3d 293 (4th Cir. 2018). The *BMG* Case resulted in an award of $ 25M in damages to the rights holder for the ISP; See also *Sony Music v Cox Communications*, 93 F. 4th 222 (4th Cir. 2024) awarding $ 1B in damages.

Any rational rights holder would devise a litigation plan that has one lawsuit to return $ 1 Billion, versus 10,000 lawsuits to return $ 187.5 M. But suing ISP's require a lot of work. Strike 3 is motivation is not to stop infringement, rather to recover money in the easiest way possible (sue end-users and settle quickly).

Strike 3 is clearly not motivated to resolve infringements on their merits or use litigation methods adopted by other media companies to efficiently reduce infringements via sending notices to the ISP.

This factor weighs in John Doe's favor.

**D.**     **Objective Reasonableness**

As per *Kirtsaeng* does John Doe's successful defense further the Copyright's Act's essential goals. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016).

John Doe's defense brought to light some very significant questions about Strike 3's key allegations in the Amended Complaint that John Doe's "profile" matched "other infringements" unrelated to the 25 infringements. Not only Strike 3 fail to provide any expert testimony "linking" the "Additional Evidence" to John Doe (aside from nothing aspersions and innuendo), John Doe's discovery

demonstrated that the two "Additional Evidence" files that make no sense alone or when compared to each other.

Demonstrating that the "Additional Evidence" file, which Strike 3 highlights and uses as a pressure tactic in their amended complaint here and in thousands of other cases (presumptively without disclosing to the named John Doe during settlement), furthers the Copyright Act. See *Omega SA vs. Costco Wholesale Corp 776 F. 3d 692, 699* (9th Cir 2015) "violative of the spirit of the Copyright Act". The purposes of the Copyright Act is to renumerate rights holders for infringements, not pressure non-infringers with false claims of other infringements.

This factor, the most significant one, weighs in John Doe's favor.

### E. Need to Advance Deterrence

Strike 3 uses templated pleadings with little downside risk of inaccurate or improper due diligence. An award of attorney fees to John Doe would deter Strike 3 from doing an inadequate investigation of data that was available to them and from manipulating data post filing.

This factor weighs in John Doe's favor.

### V. ATTORNEY FEES

Counsels for John Doe have expended numerous hours and resources on this matter. The Legal Aid Society of Hawaii (LASH), a local, state-wide, non-profit law firm, provides legal assistance and representation to low-income and qualified

individuals; however, the demand for pro bono or "affordable" defense will always be greater than the available supply of staffing or resources; as such, LASH relies on the support of competent, capable, and available attorneys when such partnership opportunities present, as they have here.

Counsels have used hundreds of hours to assist John Doe in this matter and are subsequently requesting attorneys' fees and costs. Counsels have individually provided timesheets and affidavits as to their requested rates and amounts as follows: J. Curtis Edmondson (Exhibit 8); Leonard J. French (Exhibit 9); and Morgan K. Sasaki (Exhibit 10).

## VI. CONCLUSION

As John Doe prevailed in this case and each of the *Fogerty Factors* weighs in his favor, he respectfully asks for an award of attorney fees and costs in the amount of $85,612.75 and costs in the amount of $2,158.86.

\* \* \*

Dated: Honolulu, Hawaii, January 20, 2024

| | |
|---|---|
| */s/ J. Curtis Edmondson* | */s/ Morgan K. Sasaki* |
| EDMONDSON IP LAW | LEGAL AID SOCIETY OF HAWAI`I |
| J. CURTIS EDMONDSON* | MORGAN K. SASAKI |
| *pro hac vice* | |

Counsels for Defendant