# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| Strike 3 Holdings LLC, | ) | CIVIL NO. 1:23-cv-00178-JAO-RT |
| Plaintiff, | ) | |
| vs. | ) | **JORGE ARCO'S EXPERT REPORT** |
| John Doe Subscriber assigned IP address 75.85.3.187, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Prepared By:   Jorge Arco
               Enterprise Architect for
               Strike 3 Holdings, LLC

# EXPERT REPORT OF JORGE ARCO

1. My name is Jorge Arco.

2. I am over the age of 18 and competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge and, if called and sworn as a witness, I can and will competently testify to all matters contained herein.

## Prior Expert Testimony

3. During the previous four years, I have not testified as an expert at trial or by deposition.

## Expert Qualifications

4. From 2010 to 2012, I studied Systems and Network administration at I.E.S. TRIANA, located in Seville, Spain, where I received my certificate in higher education.

5. Since 2012, I have worked in the information technology industry.

6. During my time in this industry, I have worked as a software developer at various seniority levels including lead software developer, system administrator, lead system administrator, enterprise architect, cloud and security consultant, and software and systems instructor.

7. During my career, I have acquired significant skills in areas such as operating systems (UNIX/Linux), network design and administration, information security, databases, and software and systems architecture.

8. I have also contributed to several open-source projects and ecosystems, including Kubernetes and Traefik. My contributions have focused primarily on areas of observability, operating systems, distributed systems, and software design.

9. I am highly competent in various programming languages including Typescript, Javascript, PHP, Golang, and Python.

## Strike 3 Holdings, LLC Background

10. I work for General Media Systems, LLC ("GMS") the parent company for Strike 3 Holdings, LLC ("Strike 3"), a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, Delaware. Strike 3 is owned entirely by GMS and has existed since 2015.

11. I have worked with GMS since 2016, initially under the title of Senior Developer.

12. In my role as Senior Developer, I worked primarily on the development of GMS's websites that distribute, among others, Strike 3's movies. In 2018, I was promoted to Lead Systems Administrator and reported directly to the CTO. As Lead Systems Administrator, I participated in the creation, implementation, and maintenance of the VXN Scan infrastructure.

13. In February 2021, I was promoted to the role of Enterprise Architect. In this role, my main duties have been to ensure that software architecture, systems, networking, and corporate applications are set up for success. In March 2022, I

transitioned from an employee to a contractor under the same role. I continued to oversee the VXN Scan infrastructure and work with Strike 3's legal team to ensure that the VXN Scan is always running properly.

14. In 2024, after the retirement of our former CTO, I was assigned the additional duty of executing declarations describing the creation, operation, and maintenance of the VXN Scan infrastructure and components.

## Strike 3 Holdings, LLC's Infringement Detection System

15. Under the supervision of the previous CTO, I was part of a team that developed the infringement detection system VXN Scan ("VXN"). In 2018, as Lead System Administrator, my team and I participated in the creation and, later on, maintenance of VXN which Strike 3 both owns and uses to identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol. Since 2021, I have also participated in the maintenance and evolution of VXN components under the role of Enterprise Architect.

16. It took the team approximately six months to develop VXN.

17. As explained below, VXN has several components and processes.

## The Torrent Collector/Scraper

18. The first component of VXN is the Torrent Collector.

19. Torrent websites host .torrent files or list magnet links referring to .torrent files, which contain torrent metadata. In order to download content through

BitTorrent, a user will first download a BitTorrent client (i.e., software that enables the BitTorrent protocol work), and then will search for and acquire .torrent files from torrent websites. The BitTorrent client reads the .torrent file's metadata, specifically its "Info Hash,"[1] and uses that information to download pieces of the desired computer file that correlate to the .torrent file previously acquired.

20. The Torrent Collector is software that conducts lexical searches of Plaintiff's titles within well-known torrent websites.

21. The Torrent Collector is serviced at Amazon Elastic Compute Cloud ("Amazon EC2"). Amazon EC2 is a web service that provides secure, resizable compute capacity in the cloud.[2]

**The Downloader**

22. The second component of VXN is a software called Downloader. After the Torrent Collector's lexical search yields a match (i.e., it has located a .torrent file which establishes that the correlating targeted computer file contains the title of one of Plaintiff's works), the Downloader subsequently downloads the .torrent file and a full copy of the targeted computer file from the whole BitTorrent swarm. To be clear, the Downloader does not obtain a full copy from a single infringer.

---

[1] The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file across the BitTorrent network. To be clear, the "Info Hash" is not the hash value of the complete file nor its correlating .torrent file. Instead, it is a unique identifier contained in the metadata of the .torrent file that provides a "map" so that those pieces can be collected and re-assembled into a complete file (i.e., a playable movie) by a BitTorrent client.

[2] *See* https://aws.amazon.com/ec2/.

23. The targeted computer file is downloaded for human audiovisual verification purposes only. Indeed, downloading the entire targeted computer file is necessary so that Strike 3 can confirm that the targeted computer file, which is downloaded in pieces using the "Info Hash" value in the metadata of the related .torrent file, is in fact an infringing copy of a copyrighted work it owns.

24. It is impossible for the Downloader to re-distribute or upload any of the retrieved data, since, as written, the program does not contain such a function. To be clear, the downloader will never upload data to other computer systems in the BitTorrent network.

25. The Downloader then stores the .torrent file and a full copy of the targeted computer file directly onto a cloud platform account provided by Amazon Web Services ("AWS").

26. The Downloader is also serviced at Amazon EC2.

### The Proprietary Client

27. The third component of VXN is a proprietary BitTorrent client ("Proprietary Client").

28. After the Downloader downloads the .torrent file and targeted computer file as described above, the Proprietary Client connects to peers within the swarm associated with that infringing computer file. The Proprietary Client connects to these peers using a TCP/IP connection. This connection cannot be spoofed.

29. Once the connection is established, the Proprietary Client begins the process of downloading a piece or multiple pieces of the infringing computer file from other computers connected to the Internet through IP addresses, which are offering pieces of the infringing computer file for download (i.e., "peers" in the BitTorrent "swarm"). The Proprietary Client accomplishes this by using the Info Hash value in the metadata of the .torrent file, which has already been confirmed to correlate with a digital media file that infringes upon one of Strike 3's copyrighted works. The BitTorrent protocol ensures that, because the Proprietary Client requests file pieces based on this specific Info Hash value, it only receives pieces of the related digital media file. In short, it repeatedly downloads data pieces from peers within the BitTorrent network which are distributing Plaintiff's movies.

30. In this way, the Proprietary Client emulates the behavior of a standard BitTorrent client. However, there are two ways in which the Proprietary Client differs from a standard BitTorrent client. The first is that the Proprietary Client is incapable of distributing the infringing computer files. Thus, it is only able to download data from peers in a swarm and is unable to upload any data to the peers in a swarm. The second exception is that the Proprietary Client is disabled from storing any of the content obtained from the transaction and the Proprietary Client does not itself record evidence of infringement.

31. The Proprietary Client operates on an independent physical server which is

located in a professional data center in Florida.

## PCAP Recorder / Capture Card

32. The fourth component of VXN is the PCAP Recorder, which uses a physical PCAP Capture Card.

33. Data sent through the Internet is delivered in the form of "packets" of information. PCAP stands for "Packet Capture." A PCAP is a computer file containing captured or recorded data transmitted between network devices.

34. In this case, Plaintiff sought to record numerous infringing BitTorrent computer transactions in the form of PCAPs. The PCAPs evidence particular IP addresses connecting to the Proprietary Client and sending pieces of a computer file (which contains an infringing copy of Plaintiff's works) to the Proprietary Client.

35. Strike 3's need to record and secure PCAPs is logical since PCAPs contain specific BitTorrent transaction details of evidentiary value.

36. Indeed, a PCAP contains the Internet Protocol (IP) Addresses used in the network transaction, the date and time of the network transaction, the port number[3] used to accomplish each network transaction, BitField value[4], and the BitTorrent

---

[3] A port is a communication endpoint. Ports are identified for each protocol and address combination by the port number.

[4] The "BitField" value is data exchanged during the handshake (and it also increases as the user continues to obtain more bits of the works) between the infringer and another peer. It informs the peer about the pieces available for download and therefore the total amount of the torrent file that the infringer has already downloaded and which the infringer is able to distribute to another peer upon request. This broadcasted value provides other peers with the percentage of the file which the infringer possesses. The "BitField" value is a value contained in every PCAP.

client used to accomplish the network transaction. All of the above can be useful in identifying an infringer.

37. A PCAP also identifies the Info Hash value that was used to obtain the transacted piece. This information identifies the data that was shared in the recorded transaction as a constituent part of a specific digital media file, which, as described above, has been confirmed to be a file that infringes upon one of Strike 3's copyrighted works.

38. In order to record the PCAPs in real-time for all BitTorrent transactions which the Proprietary Client is involved in, VXN uses a Capture Card called Link™ NT40A01 SmartNIC. This is a network capture card that was developed and manufactured by Napatech™.

39. Napatech is the leading provider of reconfigurable computing platforms.[5] It develops and markets the world's most advanced programmable network adapters for network traffic analysis and application off-loading. Napatech's "family of SmartNICs enables government and military personnel to capture all the data running through their networks[.]"[6]

40. Within VXN, the Capture Card is connected to the Proprietary Client's

---

[5] *See* https://marketing.napatech.com/acton/attachment/14951/f-cce2aadf-5242-49dd-b515-31bd48077066/1/-/-/-/-/Fort%20Huachuca%20Press%20Release.pdf.

[6] *See* https://marketing.napatech.com/acton/attachment/14951/f-cce2aadf-5242-49dd-b515-31bd48077066/1/-/-/-/-/Fort%20Huachuca%20Press%20Release.pdf.

9

network connection via a passive network tap. A passive network tap allows the Capture Card to record perfect copies of all traffic without actively interacting with any other components within the network (i.e., the Proprietary Client). In this manner, the Capture Card retrieves an identical copy of each and every single network packet which is sent[7] and received by the Proprietary Client.

41. The PCAP Recorder receives that data from the Capture Card and streams the PCAP files directly onto a cloud platform account provided by AWS. More specifically, the cloud platform is known as Amazon Simple Storage Service ("Amazon S3"). Within this Amazon S3 account, Plaintiff has enabled the object lock "legal hold" feature. This feature "prevents an object version from being overwritten or deleted […] [which] remains in effect until removed."[8] Thus, this ensures that the files cannot be modified or deleted.

42. Plaintiff's "legal hold" feature is currently set for three years. Therefore, the PCAPs cannot be modified or deleted for three years from the date and time the PCAP was first streamed onto the Amazon s3 cloud.

43. To be clear, no PCAP data is stored locally on the Capture Card. Rather, the PCAP data is streamed in real time and stored directly onto Amazon S3.

44. The Capture Card is synchronized with time servers that use the Global

---

[7] The Proprietary Client does not send any data to BitTorrent peers. But even if it did, the Capture Card would record such transactions.

[8] *See* https://docs.aws.amazon.com/AmazonS3/latest/dev/object-lock-overview.html#object-lock-legal-holds.

Positioning System (GPS) as a clock source. This ensures that the dates and times within the PCAPs are accurate. Each recorded transaction is recorded in milliseconds (thousandths of a second).

47. The independent physical server housing the Capture Card and PCAP Recorder is also located at a professional data center in Florida.

### The PCAP Stamper

46. The fifth component of VXN is the PCAP Stamper software.

47. Every 24 hours the PCAP Stamper[9] sends an index of every PCAP file VXN has recorded within the last 24 hours to a 3rd party provider called DigiStamp, Inc.[10] DigiStamp, Inc. then signs the index with a qualified timestamp. This ensures that the PCAPs existed on the date and time listed in the timestamp, and that it has not been modified as of the date and time listed in the timestamp.

48. The PCAP Stamper is located on Amazon EC2.

### The PCAP Analyzer

49. The sixth component of VXN is the PCAP Analyzer. The PCAP Analyzer is

---

[9] Though we termed this software the "PCAP Stamper," this term is not descriptive since it is DigiStamp, Inc. that actually signs the PCAP index with a qualified timestamp.

[10] DigiStamp, Inc. provides "tools to prove the authenticity and integrity of electronic records. By the end of 2003, DigiStamp had created more than 1 million timestamps for customers. Not a single DigiStamp timestamp has ever been successfully challenged. In 2005, [DigiStamp] commissioned and completed an external audit so that [its] timestamp meets the highest standards of strong legal evidence for authenticating computer data." Further "state and federal agencies, as well as foreign governments, have sought [DigiStamp's] advice and our products. From the Supreme Court of Ohio to the Department of Defense to the federal governments of Mexico and Australia, [DigiStamp] [is] recognized as reliable experts who offer sound thinking as well as a fine product." *See* https://www.digistamp.com/about-us/aboutus.

11

software that: (a) retrieves stored PCAP files from Amazon S3; (b) extracts infringing transaction data from each PCAP; (c) verifies that each retrieved data piece is a part of the .torrent related file (and therefore distributing Plaintiff's copyrighted content) by using cryptographic hashes; and (d) organizes and summarizes the extracted infringing transaction data in a tabular format.

50. Each line item within the PCAP Analyzer's tabular output always references an existing PCAP file. In other words, there is a PCAP recording for every infringing transaction listed in the PCAP Analyzer's tabular output. Thus, Plaintiff is always able to provide the original recording (the PCAPs) for each transaction listed in the tabular output. The tabular format is merely a summary of the PCAP data and is created for better human readability.

51. The PCAP Analyzer is connected to Maxmind® GeoIP2 Precision Services geolocation database.[11]

52. Maxmind is "an industry-leading provider of IP intelligence and online fraud detection tools."[12] "Over 5,000 companies use GeoIP data to locate their Internet visitors and show them relevant content and ads, perform analytics, enforce digital rights, and efficiently route Internet traffic."[13] Maxmind is not "software" or technology, but instead it is a database. Maxmind compiles information it receives

---

[11] *See* https://www.maxmind.com/en/geoip2-precision-services.

[12] *See* https://www.maxmind.com/en/company.

[13] *Id.*

from Internet Service Providers (ISPs) containing the city and state locations of the users of the ISPs and their respective IP addresses. Maxmind maintains and updates this list weekly and sells access to it.

53. The PCAP Analyzer uses the Maxmind database to determine both the Internet Service Provider that assigned a particular IP address, as well as the city and state that the IP Address traces to. The PCAP Analyzer adds this information to the tabular output.

54. For clarity, note that the PCAP Analyzer will analyze the captured data, only after it has been stored and locked in Amazon s3. Prior to this analysis, no human or computer system has any 'knowledge' of what transactions these PCAP files contain, or what IP addresses have been communicated with.

55. The PCAP Analyzer runs continuously in real-time.

56. The PCAP Analyzer software is located on Amazon EC2.

57. The PCAP Analyzer fulfills the same basic function as the well-known software called Wireshark and follows the same standards.

## **Strike 3 Holdings, LLC's Cross Reference Tool**

58. I maintain and participate in the design and development of Strike 3's Cross Reference Tool which is separate from VXN Scan. Strike 3 both owns and uses this Cross Reference Tool to identify other BitTorrent network activity emanating from an IP address.

Docusign Envelope ID: 5BB7A7D9-F82C-4E4F-96A8-C813C831EB17

59. A distributed hash table (DHT) is a class of a decentralized distributed system that provides a lookup service similar to a hash table: (key, value) pairs are stored in a DHT, and any participating node can efficiently retrieve the value associated with a given key. Responsibility for maintaining the mapping from keys to values is distributed among the nodes, in such a way that a change in the set of participants causes a minimal amount of disruption. This allows a DHT to scale to extremely large numbers of nodes and to handle continual node arrivals, departures, and failures. BitTorrent clients use a "Distributed Hash Table" (DHT) to locate peers who are distributing a specific torrent file (infohash). Specifically, a BitTorrent client locates and connects to the DHT network. That way it registers its own IP address while requesting IP addresses of other peers, which are distributing the same torrent file. Using this process BitTorrent users are able to locate and connect to a number of peers within a particular swarm, and download the data related to each torrent file.

60. The Cross Reference Tool uses servers which are programmed to crawl popular torrent websites. In the process, the servers locate torrent files and their related info hashes. The servers subsequently download the torrent information from these websites. Similar to BitTorrent clients, the Cross Reference Tool uses a DHT to obtain the IP Addresses of peers registered to each torrent file. The Cross Reference Tool uses nodes to locate peers participating in the distribution of a

specific torrent-file. The Cross Reference Tool repeatedly requests a list of as many registered peers as possible within a given swarm. Since peers are constantly joining and leaving, and every DHT peer only holds a small portion of the distributed information, it's technically impossible to get a complete list. All responses are saved in a database. This includes the IP addresses, dates, hash values, and file names corresponding to the torrent-files.

61. While it is feasible that the response of a single DHT node could have been manipulated, the Cross Reference Tool randomly chooses different nodes to query out of millions of active nodes. The DHT design means that every infohash is assigned to a different globally distributed group of nodes. Therefore, it would be virtually impossible for the data collected to be manipulated across multiple nodes.

62. To be clear, the Cross Reference Tool does not engage in any TCP/IP transactions with any IP addresses provided by the DHT network. Thus, it does not download from peers the computer file referenced by the torrent file shared within the swarm nor does it upload any files to the DHT or the swarm.

63. As of today, the results of a search within Strike 3's Cross Reference Tool database for Defendant's IP address 75.85.3.187 are attached hereto as Exhibit "A." The database records show Defendant's IP address was a registered peer within the swarms for each of the third party works listed on Exhibit "A."

## PCAPs Extracted from AWS

64. In this case, as of today, VXN Scan captured a total of 168 PCAPs which establish that Defendant's IP address 75.85.3.187 was distributing movies belonging to Strike 3 via the torrent network.

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of October, 2024.

By:_____
**JORGE ARCO**