# EXHIBIT 4



Computer Forensics, LLC
8461 Lake Worth Road Suite 233G
Lake Worth, FL 33467
Main: 561.404.3074
www.ComputerForensicsLLC.com

**EXPERT REPORT**

Prepared By:   Patrick Paige, SCERS
               Managing Member
               Computer Forensics, LLC

1

# DECLARATION OF PATRICK PAIGE

**I, PATRICK PAIGE, DO HEREBY DECLARE:**

1. My name is Patrick Paige. I am a managing member at Computer Forensics, LLC. I am over the age of eighteen (18) and otherwise competent to provide this report. The facts stated in this declaration are based upon my personal knowledge.

2. Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") retained me: (a) to test and opine about its infringement detection system, VXN Scan ("VXN" or "VXN Scan"); and (b) to conduct a computer forensic examination of Defendant's hard drives and/or examine native files produced from search results of Defendant's hard drives.

## Prior Expert Testimony

3. My curriculum vitae ("CV") is attached as Exhibit A. A list of all other cases in which, during the previous four years, I have testified as an expert at trial or by deposition is set forth on my CV.

## Compensation

4. Computer Forensics, LLC is compensated for my services on an hourly basis by Strike 3 Holdings, LLC in this case for pre-trial investigative work at the rate of $325 per hour. However, this fee increases if I am required to testify at trial.

5. As of the date of this report, the only communication between me or Computer Forensics, LLC on the one hand, and Strike 3 Holdings, LLC or its counsel on the other hand, relating to the compensation received for my work on this matter is attached hereto as Exhibit B.

## Expert Qualifications

6. I was a police officer from 1989 until 2011 for the Palm Beach County Sherriff's Office. And, from 2000-2011, I was a detective in the Computer Crimes Unit. After leaving the

Palm Beach County Sherriff's Office, I Co-founded Computer Forensics, LLC, where I am currently employed.

7. I have taken over 400 hours of courses designed to teach people how to conduct computer forensic examinations.

8. Also, while working from 2003-2011 for Guidance Software, the makers of EnCase, I taught over 375 hours of courses in computer forensics ranging from beginner to advanced levels.

9. As a computer crimes detective for the Palm Beach County Sheriff's Office, I have conducted forensic computer examinations for:

    (a) Broward County Sheriff's Office (BSO);

    (b) Federal Bureau of Investigation (FBI);

    (c) U.S. Customs and Border Protection (CBP);

    (d) Florida Department of Law Enforcement (FDLE);

    (e) U.S. Secret Service;

    (f) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and

    (g) Various municipalities in the jurisdiction of Palm Beach County.

10. I have had students in my courses from various government branches, including: (a) sheriff's offices; (b) FBI agents; (c) ATF agents; (d) agents from the Central Intelligence Agency; and (e) individuals from other branches of government and the private sector.

11. I have received the following awards and commendations:

    (a) 1991 – Deputy of the Year, awarded by the 100 Men's Club of Boca Raton & Rotary Club.

    (b) 1997 – Deputy of the Month for June.

    (c) 2001 – Detective of the Month for October.

(d) 2002 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jerrold Levy* case.

(e) 2003 – U.S. Customs Service Unit Commendation Citation Award for computer forensic work in Operation Hamlet.  Operation Hamlet was one of the largest rings in the history of U.S. Customs of individuals who were molesting their own children and transmitting the images and video via the Internet.

(f) 2005 – Detective of the Month for December.

(g) 2006 – Letter of Commendation issued by the FBI for outstanding computer forensic work in the *U.S. vs. Frank Grasso* case.

(h) 2007 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jimmy Oliver* case.

12. I have testified as a fact and expert witness on numerous occasions in the field of computer forensics in both trial-level and appellate proceedings before state, federal, and military courts in California, Florida, Indiana, New Jersey, New York, and Pennsylvania.

13. No court has ever refused to accept my testimony on the basis that I was not an expert in computer forensics.  My skill set and my reputation are my most important assets in my current position with Computer Forensics, LLC.

14. As part of my duties within the Computer Crimes Unit at the Palm Beach County Sherriff's Office, I investigated cases involving the use of the Internet, including cases involving peer-to-peer file sharing networks.  In this role, I also investigated Internet child pornography and computer crime cases.

15. I was assigned to the Computer Crimes Unit that worked in conjunction with a private company called TLO Corp.

16. When I worked with TLO Corp., I supervised the other detectives assigned to the unit, which consisted of six online investigators and two computer forensic examiners.

17. In my experience, during the initial phase of Internet-based investigations, the offender is only known to law enforcement by an IP address.[1]

18. The only entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider ("ISP").

19. Once provided with the IP Address, plus the date and time of the detected and documented activity, ISP's can use their subscriber logs to identify the name, address, email address, and phone number of the applicable subscriber assigned that IP address at the stipulated date and time.

20. Regarding my experience in investigating child pornography cases, I supervised police officers whose responsibility it was to establish a successful TCP/IP connection with persons who were sending pornographic images of children or other illegal content over the Internet using peer-to-peer file sharing programs.

21. The offenders' IP addresses, as well as the dates and times of the illegal transmissions, were recorded by law enforcement.

22. An officer would then request that the assistant state attorney subpoena the corresponding ISPs for the purpose of identifying the subscribers that were transmitting the illegal content.

23. In these cases, the subscribers were not notified by the ISPs that their identity was being subpoenaed because they could have deleted the images and destroyed the data.

24. After receiving the subscribers' identities, we would prepare a search warrant authorizing us to enter the subscribers' dwelling and seize all their computer devices.

---

[1] An IP address is a numerical value assigned to a computer or device that transmits and receives data via the Internet. When a computer user accesses the Internet, their Internet Service Provider assigns them a unique IP address for that session. To identify a computer user who is downloading files via the Internet, one must be able to identify the IP address the user was using at that exact time and date of downloading.

5

25.     While at the Computer Crimes Unit, I was directly involved in approximately 200 search warrants either by way of managing the process or performing it personally.

26.     During my time in the Computer Crimes Unit, I can recall only one instance, in the approximately 200 times that we executed a search warrant and seized computers, where we did not find evidence of the alleged illegal activity at the dwelling identified in the search warrant.

27.     In that one instance, the Wi-Fi connection was not password protected, and the offender was a neighbor behind the residence.

28.     I never came across a situation in which a Wi-Fi was password-protected and accessed by someone else without permission (i.e., a "hacker").

29.     In my opinion, a person using BitTorrent to download and distribute child pornography has a greater incentive to hack someone's Wi-Fi connection than a person using BitTorrent to download mainstream media or legal pornography because transmission of child pornography is a very serious crime with heavy criminal penalties, and many offenders can face life sentences if convicted.

30.     To ascertain the identity of the infringer, just as with law enforcement, Strike 3 Holdings, LLC must subpoena the ISP to learn the subscriber's true identity.

31.     In addition to the foregoing, my attached CV outlines all other professional and expert experience I have in the field of computer forensics.

### Expert Opinion

**A. VXN Scan Accurately Detects and Records Activity on the BitTorrent Network**

32.     Strike 3 created and owns an infringement detection system called VXN Scan. Strike 3 uses VXN Scan to identify individuals who are illegally downloading and distributing content via BitTorrent.

6

33.　　To determine the accuracy of VXN Scan, I constructed and then conducted a test to determine VXN Scan's ability to accurately detect a BitTorrent network user's IP address, identify metadata (client software and version used by a torrent network user) associated with BitTorrent transactions, and identify files distributed on the torrent network.

34.　　The facts and data that I considered to give my expert opinion of VXN Scan are set forth in this expert report, the Declaration of David Williamson in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference (CM/ECF 8-2), Jorge Arco's Expert Report, and all documents located in DropBox folder titled "HID-1060 – Patrick Paige's Facts and Data", the link for which is:

> https://www.dropbox.com/scl/fo/s0ci6twn2ved1dy17sh2m/AEU3DTst4RH45zHxWBcni sg?rlkey=y7ay4uw9kwlli7s2vznuombd9&st=f2ubgutn&dl=0

### i. Set Up of VXN Scan Test

35.　　To begin my test of VXN Scan, I first downloaded four public domain movies from the national archive. Specifically, the file names of the movies I downloaded are:

a) 20000_Leagues_Under_the_Sea_512kb.mp4;

b) abraham_lincoln_512kb.mp4;

c) Escape_from_Sobibor_512kb.mp4; and

d) Plan_9_from_Outer_Space_1959_512kb.mp4.

36.　　I then encoded unique text into each movie file and renamed the file, thereby creating four files that I will refer to in this report as the "Test Movie Files."

37.　　Further, I took a duplicate of the movie file named "20000_Leagues_Under_the_Sea_512kb.mp4" and encoded it with unique text to be used for the VPN portion of the test. Table 1 below lists the text encoding for each movie file.

7

| Original Movie File Name | Text Encoded Within Movie File | Movie Test File Name |
|---|---|---|
| 20000_Leagues_Under_the_Sea_512kb.mp4 | CFLLC 2022 VXN Scan Test Under Sea Adventure | AbrahamPresident2022DVDrip.mp4 |
| abraham_lincoln_512kb.mp4 | CFLLC 2022 VXN Scan Test Abraham | Sobibor Movie2022DVDRip.mp4 |
| Escape_from_Sobibor_512kb.mp4 | CFLLC 2022 VXN Scan Test Escape From Sobibor | Planet Outer Space2022DVDRip.mp4 |
| Plan_9_from_Outer_Space_1959_512kb.mp4 | CFLLC 2022 VXN Scan Test Planet Outer Space | UnderSeaAdventure2022DVDRip.mp4 |
| 20000_Leagues_Under_the_Sea_512kb.mp4 | CFLLC 2022 VXN Scan Test ShipsOceans VPN Service | ShipsOceansDVDripVPN.mp4 |

Table 1- The original movie file names, their encoded text, and their movie test file names.

[SPACE INTENTIONALLY LEFT BLANK]

38. The purpose of this unique text encoding was to ensure that when a file is located and download by VXN Scan, I could easily identify it as the video I personally encoded and seeded.

39. I then setup and configured five different computers ("Test Computers"). Four of the Test Computers were connected to the Internet directly through a standard internet connection. One Test Computer was configured with a VPN (Virtual Private Network) connection using Express VPN software.[2]

40. I then configured four of the Test Computers with different versions of a Windows operating system, specifically, version 7, 10, and 11. One Test Computer was a MacBook Pro configured with OS X El Capitan version 10.11.4. I then installed a different BitTorrent client[3] onto each of the five Test Computers. Table 2 below illustrated the test configurations:

| **Test Computer** | **Operating System** | **BitTorrent Client** | **Internet Connection** | **Movie Test File** |
|---|---|---|---|---|
| Dell M6600 Laptop | Windows 7 | BitSpirit Version 3.6.0.550 | Standard | AbrahamPresident2022DVDrip.mp4 |
| Dell M6600 Laptop | Windows 10 | qBittorrent Version 4.2.1 | Standard | Sobibor Movie2022DVDRip.mp4 |
| HP Pavilion Laptop | Windows 11 | Deluge Version 1.3.15 | Standard | Planet Outer Space2022DVDRip.mp4 |
| MacBook Pro Laptop | OS X El Capitan 10.11.6 | uTorrent Version 1.8.7 | Standard | UnderSeaAdventure2022DVDRip.mp4 |
| Dell 7300 Laptop | Windows 10 | uTorrent Version 2.2.1 | VPN | ShipsOceansDVDripVPN.mp4 |

Table 2- The five Test Computers, their installed operating systems, their installed BitTorrent clients, and their internet connection.

---

[2] https://www.expressvpn.com/ (Last Accessed on October 14, 2024)
[3] A BitTorrent client is the software that enables a user to download and upload files using the BitTorrent network protocol.

9

41.     When a BitTorrent client is installed onto a computer, the computer randomly selects an incoming port number for its network communication. A port number is an integer ranging from 0 to 65535. During the test, the Test Computers each randomly selected outgoing port numbers for their network communications. The following is a chart listing the incoming and outgoing port numbers randomly assigned by each of the Test Computers:

| Test Computer | BitTorrent Client | IN Port | OUT Port |
|---|---|---|---|
| Dell M6600 Laptop | BitSpirit Version 3.6.0.550 | 24460 | 15736 |
| Dell M6600 Laptop | qBittorrent Version 4.2.1 | 38010 | 54370 |
| HP Pavilion Laptop | Deluge Version 1.3.15 | 38089 | 49386 |
| MacBook Pro Laptop | uTorrent Version 1.8.7 | 20909 | 53459 |
| Dell 7300 Laptop | uTorrent Version 2.2.1 | 49239 | 55543 |

Table 3- The five Test Computers, their installed BitTorrent clients, and their ingoing and outgoing port numbers.

42.     After installing the BitTorrent clients, I also installed Wireshark and WinDump onto the five Test Computers. Wireshark and WinDump are programs that capture network traffic and create PCAP files. PCAP stands for "packet capture." PCAPs are akin to videotapes insofar as a PCAP is like a video recording of all the incoming and outgoing transactions of a computer. I have used Wireshark and WinDump software while in law enforcement to examine network traffic while investigating peer-to-peer cases.

43.     After installing Wireshark and WinDump onto each of the five Test Computers, I transferred each Movie Test File onto its corresponding Test Computer, as set forth in Table 2 above.

44.     I then used the BitTorrent client on each of the Test Computers to make a .torrent file for each Movie Test File thereon. I then seeded the Movie Test Files into the BitTorrent network.

10

### ii. Test of VXN Scan's Detection of an IP address Directly Connected to the Internet

45. On February 15, 2022, I started the test of four of the Test Computers connected directly to the Internet via a standard connection. I then sent David Williamson[4] from Strike 3 Holdings, LLC the torrent Info Hash values for the Movie Test Files for the purpose of loading those Info Hash values into VXN Scan.

46. Once the test was concluded, Strike 3 sent me (a) the PCAP files VXN Scan recorded during the test for each one of the Test Computers and (b) screen captures of the movies as re-assembled from file pieces acquired by VXN Scan using the torrent Info Hash values I provided.

47. I reviewed the PCAPs and noted that VXN Scan's PCAPs correctly identified the IP address used by each Test Computer that had been used to seed the Movie Test Files.

48. I then reviewed VXN Scan's PCAPs side-by-side with the PCAP log files each of the Test Computers created and determined that VXN Scan's PCAPs matched the Test Computers' PCAPs. This could not have happened unless VXN Scan's server made a direct TCP/IP connection to the Test Computers during the test.

49. I also examined the screen captures David Williamson sent to me and confirmed that each screen capture contained the corresponding text I had encoded into each Movie Test File.

50. I also examined VXN Scan's PCAPs to determine if VXN accurately identified the BitTorrent clients and port numbers used by the four Test Computers during the test. Using Wireshark software, I reviewed VXN Scan's PCAPs and confirmed that VXN Scan's system was

---

[4] David Williamson used to work for Strike 3 Holdings, LLC. I was informed that in May of 2024 (well after I concluded my testing of VXN Scan) Mr. Williamson retired.

11

able to accurately record the names and version numbers of the BitTorrent client software used on each of the four Test Computers. I further confirmed that VXN Scan accurately identified either the incoming or outgoing port numbers that the four Test Computers used for BitTorrent communications. Accordingly, my analysis confirmed that VXN Scan was able to accurately identify at least one of the port numbers assigned to each Test Computer's BitTorrent client.

### iii.   Test of VXN Scan's Detection of VPN IP Address

51. When a person engages in BitTorrent file sharing, other peers within the swarm (including VXN Scan) are only able to identify the user by the user's public-facing internet routable IP address. VPN software allows the user of a computer to create an encrypted tunnel to a VPN server from which the internet traffic emerges unencrypted. The VPN server's internet-facing IP address becomes the user's public internet-routable IP address, which acts as a proxy and becomes the user's public-facing internet routable IP address. VPNs provide privacy of a user's internet traffic by shielding the identity of the user's "true" IP address (*i.e.*, the IP address that their ISP assigned to them). If a person was using VPN software to engage in BitTorrent file sharing, the only IP address that VXN Scan could identity would be the VPN's IP address.

52. To verify this, I configured one Test Computer, a Dell 7300 laptop, with VPN software from ExpressVPN. *See* Table 1.

53. ExpressVPN server's IP address was then assigned to the Test Computer's Internet traffic. When the ExpressVPN software is running on the Test Computer, all the Internet traffic is routed through ExpressVPN's servers. I confirmed this by Google searching "My IP Address," which revealed my public-facing IP address was the VPN IP address.

54. With the VPN enabled, I launched uTorrent version 2.2.1 and seeded and shared the Movie Test File corresponding to the Test Computer, as set forth in Table 2. I noted the public,

12

internet-routable, public-facing VPN IP address in use by the Test Computer. After running this BitTorrent configuration using the VPN service, I sent the torrent Info Hash for the Movie Test File I had seeded to David Williamson, for the purpose of loading those Info Hash values into VXN Scan.

55. Once the test was concluded, Strike 3 sent me (a) the PCAP files VXN Scan recorded during the test for this Test Computer and (b) screen captures of the movie as re-assembled from file pieces acquired by VXN Scan using the torrent Info Hash value I provided.

56. I reviewed the PCAPs and noted that VXN Scan's PCAPs correctly identified the VPN IP address used by my Test Computer that had been used to seed the Movie Test File.

57. I then reviewed VXN Scan's PCAPs side-by-side with the PCAP log files the Test Computer created and determined that VXN Scan's PCAPs matched the Test Computer's PCAPs. This could not have happened unless VXN Scan's server made a direct TCP/IP connection to the Test Computer during the test.

58. I also examined the screen capture David Williamson sent to me and confirmed that the screen capture contained the corresponding text I had encoded into the Movie Test File.

59. I also examined VXN Scan's PCAPs to determine if VXN accurately identified the BitTorrent client and port numbers used by the Test Computer during the test. Using Wireshark software, I reviewed VXN Scan's PCAPs and confirmed that VXN Scan's system was able to accurately record the name and version number of the BitTorrent client software used on the Test Computer. I further confirmed that VXN Scan accurately identified either the incoming or outgoing port numbers that the Test Computer used for BitTorrent communications. Accordingly, my analysis confirmed that VXN Scan was able to accurately identify at least one of the port numbers assigned to the Test Computer's BitTorrent client.

60. As such, this test confirms that when the ExpressVPN software is running on a Test Computer, all the Internet traffic, including BitTorrent client traffic, is routed through ExpressVPN's servers, and VXN Scan accurately captures the VPN IP address.

B. **I Received System Log Files for a computer which allegedly belonged to Defendant**

61. On or around September 13, 2024 I received System Log Files for a computer device which allegedly belonged to Defendant. I have reviewed the files. However, I require additional time to review any other documents Defendant has produced or will produce, including computer devices and system log files.

## CONCLUSION

62. Based on the evidence and data identified in this report and its exhibits, I conclude to a reasonable degree of certainty that VXN Scan's infringement detection system accurately (a) detects and records transactions occurring via BitTorrent, (b) identifies the files distributed on the BitTorrent network in those transactions, and (c) ascertains the public-facing IP addresses used to conduct those transactions.

## STANDARDS AND LIMITATIONS

63. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and the limitations set forth herein, and are my personal, expert, impartial, and unbiased professional analyses, opinions and conclusions.

64. The reported analyses, opinions, and conclusions were performed using generally accepted methods and are compliant with the professional standards within the computer forensics industry.

65. I have no present or prospective interest in the parties related to this matter.

66. I have no bias with respect to any product, service, or party related to this matter.

67. My engagement in this assignment was not contingent upon developing or reporting predetermined result.

FURTHER DECLARANT SAYETH NAUGHT.

## DECLARATION

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of October 2024C

By: _____
PATRICK PAIGE