VIRTUESQ LLLC
CHRISTIAN L. KAMAU        10996-0
PO BOX 17098
Honolulu, Hawaii 96817
Phone: (808) 271-4537
Email: christian@virtuesq.com

JEREMY J. THOMPSON, ESQ.
The Law Office of Jeremy J. Thompson PLLC
5200 Willson Road, Suite 150
Edina, MN 55424
Phone: (952) 952-1883
Email: jeremy@jthompson.law

Attorneys for Plaintiff
Strike 3 Holdings, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Strike 3 Holdings LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>John Doe Subscriber assigned IP address 75.85.3.187,<br>　　　　　Defendant.<br><br>_____ | ) CIVIL NO. 1:23-cv-00178-<br>) JAO-RT<br>)<br>) **PLAINTIFF'S RESPONSE**<br>) **TO DEFENDANT'S**<br>) **MOTION FOR**<br>) **ATTORNEYS' FEES AND**<br>) **COSTS**<br>)<br>)<br>) |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..........................................................................................1

II.   BACKGROUND ..........................................................................................1

III.  STANDARD..................................................................................................2

IV.   ANALYSIS ...................................................................................................3

   A.  Defendant Has Flaunted to Local Rules Countless Times.............................3

   B.  The *Fogerty* Factors Weigh Against an Award of Fees..................................4

      1.  Defendant's Degree of Success Was Merely Technical............................5

      2.  Plaintiff's Litigation Was Not Frivolousness in Fact or Law....................6

      3.  The Litigation Was Brought and Prosecuted in Good Faith ....................10

      4.  Plaintiff's Claims and Conduct Were Reasonable ...................................12

      5.  Rightsholders Should Not Be Deterred from Prosecuting Mass,
          Anonymous, Online Infringement.............................................................13

      6.  Plaintiff's Litigation Serves the Ends of the Copyright Act....................14

   C.  The Requested Fee Award is Unreasonable and Unsupported ....................16

      1.  Doe's Request for Hourly Rates are Not Reasonable...............................16

      2.  Defense Counsels' Time Was Not Reasonably Expended........................19

         a.  Violations of L.R. 54.2(f)(3) ...............................................................20

         b.  Excessive Billing.................................................................................21

         c.  Improper Bill for Clerical Tasks .........................................................22

         d.  Violations of Rimini............................................................................22

      3.  Mr. French's Fees Should Be Categorically Excluded............................23

V.    CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Animaccord Ltd. v. Ali*,
  No. 23-173, 2024 WL 1972036 (D. Haw. May 3, 2024) .................................10

*Animaccord Ltd. v. Tran*,
  No. 23-173, 2024 WL 1976031 (D. Haw. Mar. 28, 2024).............................10

*Bayoh v. Afropunk LLC*,
  No. 18-5820, 2021 WL 736733 (S.D.N.Y. Feb. 23, 2021)..............................23

*Berry v. Dillon*,
  291 F. App'x 792 (9th Cir. 2008) .................................................................6

*Berry v. Hawii Exp. Serv., Inc.*,
  No. 3-385, 2007 WL 689474 (D. Haw. Mar. 2, 2007)...................................6

*Berry v. Hawiian Exp. Serv., Inc.*,
  No. 3-385, 2006 WL 4102120 (D. Haw. Oct. 25, 2006) ...............................6

*BWP Media USA, Inc. v. Busca Corp.*,
  No. 13-2629, 2014 WL 12856014 (S.D. Cal. 2014) ....................................19

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986)...................................................................16

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018)..............................................................5, 15

*Durham v. County of Maui*,
  742 F.Supp.2d 1121 (D. Haw. 2010) .......................................................17

*Eberle v. City of Anaheim*,
  901 F.2d 814 (9th Cir. 1990)....................................................................17

*Ets-Hokin v. Skyy Spirits, Inc.*,
  323 F.3d 763 (9th Cir. 2003)......................................................................6

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996)..................................................................5, 15

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) .................................2

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989)..................................................................19

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  No. 13-496, 2015 WL 5601853 (D. Haw. Sept. 23, 2015) .....................6, 12, 13

*Gaede v. Delay*,
  No. 23-35217, 2024 WL 957490 (9th Cir. Mar. 6, 2024)...............................23

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1993)..................................................................19

*Glacier Films (USA), Inc. v. Turchin*,
   896 F.3d 1033 (9th Cir. 2018)............................................................5, 7, 12, 15
*Grenier v. United States*,
   No. 22-396, 2024 WL 4818723 (D. Haw. Nov. 17, 2024) ................................8
*Hanover Ins. Co. v. Anova Food, LLC*,
   No. 14-00281, 2017 WL 2524825 (D. Haw. June 9, 2017).............................21
*HB Prods., Inc. v. Faizan*,
   No. 19-487, 2022 WL 2529864 (D. Haw. June 7, 2022)............................13, 22
*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ..........................4, 16, 19
*Ingram v. Oroudjian*,
   647 F.3d 925 (9th Cir. 2011)..............................................................................18
*Jones v. Corbis Corp.*,
   No. 10-8668, 2011 WL 4526084 (C.D. Cal. 2011).........................................22
*Jordan v. Multnomah Cnty.*,
   815 F.2d 1258 (9th Cir. 1987)............................................................................16
*Kay v. Ehrler*,
   499 U.S. 432 (1991) ...........................................................................................24
*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975)................................................................................17
*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197, 136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016) ......................2, 7, 12
*Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*,
   77 F.4th 630 (7th Cir. 2023)................................................................................7
*Luke v. Fam. Care & Urgent Med. Clinics*,
   323 F. App'x 496 (9th Cir. 2009) .......................................................................8
*Malibu Media, LLC v. Doe*,
   No. 13-536, 2013 WL 6579338 (E.D. Wis. Dec. 12, 2013) .............................25
*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005) ...................................5
*Masuda-Cleveland v. Life Ins. Co. of N. Am.*,
   No. 16-57, 2021 WL 3683911 (D. Haw. Aug. 19, 2021) .................................20
*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003)..............................................................................15
*ME2 Productions, Inc. v. Pumaras*,
   No. 17-78, 2017 WL 4707015, at 8 (D. Haw. Oct. 19, 2017)...........................18
*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ...............................15
*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009)..............................................................................22

*Neitzke v. Williams*,
    490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ................................. 6
*Norton v. Comm'r of Soc. Sec.*,
    853 F. App'x 519 (11th Cir. 2021) .................................................................. 12
*PTG Nevada, LLC v. Wilson*,
    No. 15-2017, 2016 WL 7377112 (D. Or. Dec. 20, 2016) ................................. 13
*Quesada v. Thomason*,
    850 F.2d 537 (9th Cir. 1988)............................................................................ 16
*Rimini St., Inc. v. Oracle USA, Inc.*,
    586 U.S. 334, 139 S. Ct. 873, 203 L. Ed. 2d 180 (2019) ................................. 22
*Santiago v. Equable Ascent Fin.*,
    No. 11-3158, 2013 WL 3498079 (N.D. Cal. 2013) .......................................... 22
*Sealy, Inc. v. Easy Living, Inc.*,
    743 F.2d 1378 (9th Cir.1984)........................................................................... 19
*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013)........................................................................... 12
*Signature Networks, Inc. v. Estefan*,
    No. 03-4796, 2005 WL 1249522 (N.D. Cal. 2005) .......................................... 21
*Skydiving School, Inc. v. GoJump America, LLC*,
    No. 23-292, 2024 WL 4988884 (D. Haw. Sept. 30, 2024) .......................... 21, 22
*Sony Corp. of Am. v. Universal City Studios*, *Inc.*,
    464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ................................... 14
*Strike 3 Holdings LLC v. Doe*,
    849 F. App'x 183 (9th Cir. 2021) ....................................................................... 5
*Strike 3 Holdings, LLC v. Adaire*,
    No. 20-676, 2023 WL 2245394 (M.D. Fla. Jan. 18, 2023)..................... 8, 10, 23
*Strike 3 Holdings, LLC v. Doe*,
    964 F.3d 1203 (D.C. Cir. 2020) .......................................................................... 7
*Strike 3 Holdings, LLC v. Doe*,
    No. 17-1730, 2018 WL 558962 (W.D. Wash. Jan. 25, 2018)............................. 9
*Strike 3 Holdings, LLC v. Doe*,
    No. 17-1731, 2020 WL 531996 (W.D. Wash. Feb. 3, 2020) .............................. 9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18- 12585, 2020 WL 3567282 (D.N.J. June 30, 2020) .............................. 11
*Strike 3 Holdings, LLC v. Doe*,
    No. 20-4501, 2021 WL 535218 (E.D.N.Y. Feb. 12, 2021)............................... 11
*Strike 3 Holdings, LLC v. Doe*,
    No. 23-2782, 2024 WL 4601590 (9th Cir. Oct. 29, 2024).................................. 5
*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020)............................................................................... 3

*Tuttle v. Front St. Affordable Hous. Partners*,
    No. 18-218, 2020 WL 7763328 (D. Haw. Dec. 11, 2020)...................................4

*UIRC-GSA Holdings, LLC v. William Blair & Co., L.L.C.*,
    No. 23-1527, 2024 WL 1171735 (7th Cir. Mar. 19, 2024)................................7

*Van Gerwen v. Guarantee Mut. Life Co.*,
    214 F.3d 1041 (9th Cir. 2000)...................................................................19

*Virchinsky v. Mut. of Omaha Ins. Co.*,
    No. 12-25, 2012 WL 527843 (D. Haw. Feb. 16, 2012) ...................................23

*Webb v. Ada Cnty.*,
    195 F.3d 524 (9th Cir. 1999)....................................................................19

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007)....................................................................20

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)....................................................................8

*Young v. Wolfe*,
    No. 07-3190, 2017 WL 3184167 (C.D. Cal. 2017).........................................21

**Statutes**

17 U.S.C. § 501 ......................................................................................11

17 U.S.C. § 505 .....................................................................................2, 4

**Rules**

Fed. R. Civ. P. 1 ....................................................................................14

Fed. R. Civ. P. 11(a) ...............................................................................23

Fed. R. Civ. P. 33(b)(3) ............................................................................17

Fed. R. Civ. P. 34(b)(2)(C) .......................................................................17

Fed. R. Civ. P. 8(a)(2) .............................................................................13

Local Rule 54.2 ...............................................................................1, 3, 16

Local Rule 54.2(e)(2) ...............................................................................19

Local Rule 54.2(f)(3)................................................................................20

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to L.R. 54.2 *et seq.*, Plaintiff Strike 3 Holdings, LLC ("Strike 3"), hereby submits its Response to Defendant's Motion to Attorneys' Fees and Costs. D.E. 63.

## I.    INTRODUCTION

Plaintiff stipulated to terminating its claim to avoid burdening Defendant with prolonged litigation in light of his health issues that arose during litigation. Much of the burdens of the litigation, however, were the result of defense counsels' motions and failure to participate in discovery in good faith. Now, defense counsel have neglected the Local Rules, offered a cursory glance at the *Fogerty* factors while ignoring the *Kerr* factors, and insist that this is enough to warrant fees. It is not.

Despite Plaintiff's repeated requests, there is *no evidence that any attorney has actually billed Defendant*. Rather than give their client the peace of mind that this litigation is over, defense counsel have dragged it out–exposing his and his spouse's identity in the process–all so that they can line their pockets. The Court should not countenance this behavior, and the Motion should be denied.

## II.    BACKGROUND

Plaintiff filed a redacted First Amended Complaint against Defendant on October 9, 2023. Defendant, appearing *pro se* (though aided by Mr. French), answered on November 16. D.E. 25. Several months later, appearances were entered

1

by Mr. Severson, Ms. Sasaki, and Mr. Edmondson. D.Es. 26–28. From there on, controversies over discovery arose, documented throughout Plaintiff's Motion to Compel. *See* D.E. 52. Defendant filed a doomed motion to quash, D.E. 38, as well as a motion for a protective order, D.E. 41, that defense counsel would later violate. D.E. 65-3. On October 31, 2024, the parties attended an early settlement conference in which Plaintiff consented to terminate its litigation and stipulate to judgement so that Defendant may submit a bill of costs. *See* D.E. 53.

## III.    STANDARD

The Copyright Act states that courts "*may* allow the recovery of full costs" including "reasonable attorney's fee" "in its discretion [.]" 17 U.S.C. § 505 (emphasis added). Although this "'eschews any 'precise rule or formula' for awarding fees," the Supreme Court has nevertheless "established a pair of restrictions" on that discretion. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

> First, a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment. Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

*Id.* (internal punctuation omitted).

"The touchstone of the decision to award attorneys' fees is whether the successful defense, and the circumstances surrounding it, further the Copyright Act's 'essential goals.'" *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (citation omitted). Additionally, "[c]ourts may consider (but are not limited to) five factors in making an attorneys' fees determination: (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective reasonableness of the losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Id.* (cleaned up). "Substantial weight should be accorded to the fourth factor [i.e., objective reasonableness]." *Id.* (citations omitted).

## IV.    ANALYSIS

### A. Defendant Has Flaunted to Local Rules Countless Times

Defendant's Motion can (and should) be denied out of hand for "failure to follow" the Local Rules. *See* L.R. 54.2(h). Despite conferring, and despite Plaintiff's multiple requests, Decl. Thompson, at ¶¶10–11, defense counsel refused to produce *any* evidence in support of their requested relief. *See* L.Rs. 54.2(d)(2)–(4) (requiring evidence be produced "within fourteen (14) days" after judgment is entered; *see also* D.E. 57, at 2 (adjudging that "any post-judgment motion for an award of attorneys' fees must be filed in compliance with the Local Rules"). The only support Plaintiff received regarding counsels' rates *prior to* the Motion was Mr.

Edmondson's assertion that "Kerry [Culpepper] and I have similar CVs. [Hawaii Legal Aid]'s rates are comp to other fee awards." Decl. Thompson, at ¶4. Yet, appended to the Motion on January 20, 2025, *for the first time*, were new declarations from Mr. Edmondson (D.E. 63-9), Mr. French (D.E. 63-10), Ms. Sasaki (D.E. 63-11) regarding fees, as well as Dr. Fruits (D.E. 63-6) regarding discovery. Defendant has provided no explanation for this ambush of untimely evidence.

"The bottom line is that Plaintiffs failed to follow the rules." *Tuttle v. Front St. Affordable Hous. Partners*, No. 18-218, 2020 WL 7763328, at *3 (D. Haw. Dec. 11, 2020), *report and recommendation adopted*, No. 18-218, 2020 WL 7755637 (D. Haw. Dec. 29, 2020) (denying fees). "[T]he fee applicant bears the burden of establishing entitlement to an award . . . ." *See id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983)). Defendant's "inability to prepare for such entitlement and timely provide such documentation when they had over two months to do so is not a compelling showing of good cause to ignore the procedural rules of Local Rule 54.2." *See id.* Even if these belated papers are not grounds to deny the Motion, they should, at a minimum, be struck.

## B. The *Fogerty* Factors Weigh Against an Award of Fees

It is also within the Court's discretion to deny counsels' requests for fees and costs. *See* 17 U.S.C. § 505. "Discretion," however, "is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice

that like cases should be decided alike." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 710, 163 L. Ed. 2d 547 (2005) (citation omitted). The Ninth Circuit has addressed fees in BitTorrent cases multiple times,[1] all indicating that Defendant, like any party, must show that the *Fogerty* factors weigh in favor of such an award. *See Glacier Films*, 896 F.3d at 1039. He has not done so.

### 1. Defendant's Degree of Success Was Merely Technical

Plaintiff does not contest that Defendant is the prevailing party. In fact, it stipulated to it so that the Defendant could move for fees. *Cf.* D.E. 57. Thus, Defendant's terse conclusion that he "obtained complete success," D.E. 63-1, at 5, oversells the realities of the case.

"[A] fee award is less justified when 'copyright defendants do not . . . reach the merits, prevailing instead on technical'" matters. *See Tresona*, 953 F.3d at 653 (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996)). Plaintiff prevailed on all its substantive motions, D.Es. 9, 56, except for a quibble over a protective order to which the parties had largely consented.[2] *See* D.E. 54. Even here,

---

[1] *E.g.*, *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018); *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018); *Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183 (9th Cir. 2021) ("Strike 3 I"); *Strike 3 Holdings, LLC v. Doe*, No. 23-2782, 2024 WL 4601590 (9th Cir. Oct. 29, 2024) ("Strike 3 II").

[2] Plaintiff, *sua sponte*, requested protective measures be undertaken on Defendant's behalf before he appeared. *See* D.E. 8, at 16; D.E. 15 (motion to seal); *see also* D.E. 32 (reminding Defendant of temporary protective order at D.E. 16).

Defendant's "success" was vitiated, as defense counsel revealed his and his spouses name on the docket. *See* D.E. 65. To the extent this factor weighs in favor of Defendant, it does so lightly. *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (denying fees was proper when the "only factor" weighing in favor of fee award was degree of success).

### 2. Plaintiff's Litigation Was Not Frivolousness in Fact or Law

Next, "[t]he mere fact that Plaintiff's claims against [Defendant] were unsuccessful does not automatically render them frivolous." *Berry v. Hawiian Exp. Serv., Inc.*, No. 3-385, 2006 WL 4102120, at *9 (D. Haw. Oct. 25, 2006), *report and recommendation adopted as modified sub nom. Berry v. Hawii Exp. Serv., Inc.*, No. 3-385, 2007 WL 689474 (D. Haw. Mar. 2, 2007), *aff'd sub nom*, *Berry v. Dillon*, 291 F. App'x 792 (9th Cir. 2008) (citing *Neitzke v. Williams*, 490 U.S. 319, 329, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989)). "A claim is 'frivolous' if it 'lacks an arguable basis either in law or in fact.'" *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-496, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015) (quoting *Nietzke*, 490 U.S. at 325).

Defendant first turns to Seventh Circuit dicta suggesting that Plaintiff's "multiplicity of suits"[3] in *other* matters evinces frivolousness *here*. D.E. 63-1, at 5.

---

[3] This reliance on out-of-circuit authority is misleading. The Seventh Circuit has unique "precedent," under a law and economics paradigm, that unsuccessful litigants "should . . . face[] a steep, uphill battle to rebut our very strong presumption in favor

The Ninth Circuit has foreclosed this argument, holding that "individual cases . . . . deserve to be judged *on their own merits* and not saddled with a blanket indictment against peer-to-peer copyright litigation." *Glacier Films*, 896 F.3d at 1038. Defendant's insistence that the Ninth Circuit did not mean what it said, D.E. 63-1, at 5–6, not only falls flat, but fails to show what in any of these other cases was frivolous. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020) ("Where, as here, a plaintiff alleges that it is the victim of copyright infringement on a massive scale, the mere fact that it has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose.").

Returning to the matter *sub judice*, Defendant also fails to shoulder his burden. He speculates that Plaintiff's Additional Evidence "suggest[s] either [an] 'Open Wifi' or a system for detecting infringements that is clear[ly] flawed." D.E. 63-1, at 6. Yet his only support for this sweeping statement is from an untimely declaration provided by Dr. Fruits who was not disclosed or qualified to opine on such data.[4]

---

of awarding the defendants their fees," *Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*, 77 F.4th 630, 633 (7th Cir. 2023), although it has recently pulled that back, and held that it's precedent "never said the presumption warrants automatic victory for prevailing defendants." *UIRC-GSA Holdings, LLC v. William Blair & Co., L.L.C.*, No. 23-1527, 2024 WL 1171735, at *3 (7th Cir. Mar. 19, 2024) (citation omitted). Regardless, the Ninth Circuit has expressly declined to follow this approach "because doing so would collide with Supreme Court guidance and is not consistent with the statute." *Glacier Films*, 896 F.3d at 1039 (citing *Kirtsaeng*, 136 S.Ct. at 1988–89).

[4] Dr. Fruits describes himself as "an economics expert, finance expert, and statistics expert," D.E 63-6, at 16, who Defendant disclosed would "testify as to statutory,

*See* D.E. 63-6. What he ambiguously describes "manipulated" data, he later acknowledges is the result of Plaintiff *filtering* out data, *cf. id.* at ¶13, which was done to clarify matters for defense counsel. *See* Decl. Fernandez, at ¶¶12–15. Critically, nowhere does Dr. Fruits point to false or doctored data in Plaintiff's Additional Evidence. *See id.* at ¶¶8–11, 17–18; *see also* D.E. 63-5, at ¶¶32–50 (expert report by Patrick Paige validating VXN Scan); *Strike 3 Holdings, LLC v. Adaire*, No. 20-676, 2023 WL 2245394, at *1 ¶10(a) (M.D. Fla. Jan. 18, 2023) (denying "request to exclude VXN Data" where Dr. Fruits was also an expert).

In a stunning lack of candor, Defendant criticized Plaintiff's expert's reports for not "connect[ing] John Doe to the infringement," noting that "there is not a single opinion in the report [regarding] how John Doe . . . downloaded any of the 25 works." D.E. 63-1, at 6. Defendant omits, however, that its experts' reviews were hampered by Defendant's failure to disclose, failure to produce, and failure to preserve electronically stored information ("ESI"). *See generally* D.E. 52-1, at 7–14. The only personal devices he disclosed (yet declined to produce) was a USB for

---

actual damages, and actual injury suffered by Plaintiff." D.E. 52-6, at 4 (Defendant's Amended Initial Disclosure). "The appropriate sanction for the untimely disclosure is to strike [Dr. Fruits] as an expert witness and to strike his expert report and testimony." *See Grenier v. United States*, No. 22-396, 2024 WL 4818723, at *3 (D. Haw. Nov. 17, 2024) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); *see also Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 499 (9th Cir. 2009) ("As Plaintiffs provided no justification—let alone substantial justification—for the untimely submission, this exception to Rule 37(c)(1) automatic exclusion is inapplicable.").

his Tesla, and the only system log files he produced were from one of his children's school computers. *See id.* at 11–14. As the child's computer was the only ESI produced, Mr. Paige simply stated that he needed to "review any other documents Defendant has produced or will produce," before he could make an informed conclusion. *See* D.E. 63-5, at ¶61.

Then, in another breach of candor, Defendant vaguely alludes to *Strike 3 Holdings, LLC v. Doe*, No. 17-1731, 2020 WL 531996 (W.D. Wash. Feb. 3, 2020)[5] in which Plaintiff supposedly "played games with their data analysis." D.E. 63-1, at 6. This is a false statement, and counsel knows better as Mr. Edmondson was counsel in that matter. There, the Court granted declaratory judgement[6] to defendant based on the "circumstantial evidence" from "undisclosed data" examined by expert, Michael Yasumoto. *Strike 3*, 2020 WL 531996 at *3, n.4. His report noted that because he did not observe any "animated titles" on video files from *one* of defendant's more than *130 hard drives*, that no infringement occurred. *See id.* at *3.

---

[5] VXN Scan was not used in that case.

[6] The procedural history of that case is bizarre and inapt. The defendant was only served in that case because the court forbid Plaintiff from uncovering his identity until *after* he was served process. *See Strike 3 Holdings, LLC v. Doe*, No. 17-1730, 2018 WL 558962, at *1 (W.D. Wash. Jan. 25, 2018). Plaintiff ultimately appealed the court's grant of summary judgement (and fees) for want of standing, but the Ninth Circuit deferred to the district court though criticizing it's "analysis of the *Fogerty* factors" which "could have been more robust . . . ." *Strike 3 I*, at 186.

That was it.  Plaintiff did not "play games" with its data,[7] nor did the court find its evidence frivolous.

### 3.  The Litigation Was Brought and Prosecuted in Good Faith

"[T]here is no evidence that Plaintiff had an improper motive in bringing or litigating this action." *Animaccord Ltd. v. Tran*, No. 23-173, 2024 WL 1976031, at *2 (D. Haw. Mar. 28, 2024), *report and recommendation adopted sub nom. Animaccord Ltd. v. Ali*, No. 23-173, 2024 WL 1972036 (D. Haw. May 3, 2024). Defendant's attacks on Plaintiff's refusal to consider evidence ring hallow as Defendant never produced anything exonerating himself even when requested.

He complains that Plaintiff did not ask more about his "open wifi"[8] before amending its Complaint, or "follow up" by "asking for user manuals" or "a calendar, D.E. 63-1, at 7, but Plaintiff *did* in discovery. Request for Production No. 9 explicitly asked for "user manuals for all ROUTERS," to which Defendant responded that

---

[7] In another case–also involving Mr. French and Mr. Edmondson–Mr. Yasumoto conceded that truncated searches such as the use of "search strings," like those Defendant proposed in this matter, D.E. 52-11, at 3–4 (objecting to producing hard drives and system log files and, instead, "agree[ing] to run a . . . search strings"), "probably wouldn't be sufficient" to accurately examine the evidence and whether "deletion [of ESI] occurred or . . . reinstallation occurred." *See Adaire*, No. 20-676, at 72:1–14 (M.D. Fla. Apr. 25, 2022) (reproduced at D.E. 52-13). The court eventually sanctioned defendant for spoliation of ESI. *Adaire*, 2023 WL 2245394 at *1. Telling, Mr. Yasumoto has not been designated an expert in this matter.

[8] Plaintiff stopped recording infringement around June 22, 2023, around the time Defendant would have received notice of the litigation. *Cf.* Decl. Fernandez, at ¶¶19–20 ; D.E. 9 (granting early discovery).

"[n]o router manuals [were] in [his] possession and control." D.E. 52-11, at 7. Similarly, Request for Production No. 17 asked for any documents (such as a calendar) evidencing whether Defendant was not home during the period of infringement. *Id.* at 10. He originally produced nothing, only to later supplement a terse list of times that is hardly exculpatory. *See* Decl. Thompson, at ¶3, Ex. 1.

Playing Monday morning quarterback, Defendant also insists that, even though Plaintiff sends DMCA notices to infringing websites, it does not use it in the manner he would prefer: "[s]ending DMCA notices to the IP addresses[.]" D.E. 63-1, at 8. But "the DMCA was intended to protect ISPs, not infringers." *Strike 3 Holdings, LLC v. Doe*, No. 18- 12585, 2020 WL 3567282, at *9 (D.N.J. June 30, 2020). "[T]here is nothing in the DMCA that suggests that merely because the statute allows a copyright owner the ability to compel ISPs to bar repeat offenders from using their services that the copyright right owner loses its statutory, and indeed constitutional right to sue infringers and seek the broader range of remedies provided by the Copyright Act." *Id.* (citing 17 U.S.C. § 501(a)–(b)).

While "[i]t may be more efficient for Congress to update the [DMCA] to remedy copyright concerns with peer-to-peer file sharing technology," the law as its stands does not diminish a rightsholder "statutory and constitutional right to enforce its copyright in court." *See Strike 3 Holdings, LLC v. Doe*, No. 20-4501, 2021 WL 535218, at *3 n.2 (E.D.N.Y. Feb. 12, 2021). *But see* D.E. 8-2, at ¶31 (explaining

11

DMCA notices do "virtually nothing to stop . . . rampant copyright infringement"). Simply put, Plaintiff "was entitled to protect its copyrights" here through litigation. *Strike 3 II*, at *2 (citing *Glacier Films*, 896 F.3d at 1042, 1044).

### 4. Plaintiff's Claims and Conduct Were Reasonable

Defendant's "innocen[ce]," *see* D.E. 63-1, at 8–9, or lack thereof, is of no moment under Section 505. "A claim is objectively unreasonable where the party advancing it 'should have known from the outset that its chances of success in this case were slim to none.'" *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-496, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015) (citations omitted). But a claim (and its prosecution) can still be reasonable even if unsuccessful. *See Kirtsaeng*, 579 U.S. at 208 ("[I]f some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion."); *see also Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013) ("[T]he mere fact that [a party] lost cannot establish his objective unreasonability.") (citation omitted).

Reductively characterizing Plaintiff's Additional Evidence as a "pressure tactic" misses the point. "No matter how it is phrased, that is evidence." *See Norton v. Comm'r of Soc. Sec.*, 853 F. App'x 519, 522 (11th Cir. 2021) (citing Black's Law Dictionary 697 (11th ed. 2019) (defining evidence as "[s]omething . . . that tends to prove or disprove the existence of an alleged fact")). Just as the prosecution of a claim "can become" unreasonable "if the litigant continues to pursue it when the

12

litigant knew or should have known that the chance of success was slim to none," *Frost-Tsuji Architects*, 2015 WL 5601853 at *5 (citation omitted), the evidence can be challenged to rebut its merits. But Defendant has not done so here.

Dr. Fruits' "report did not exonerate [him]," and Defendant's "assertion[] . . . that [Plaintiff]'s infringement detection software was unreliable[] [is] insufficiently supported . . . ." *See Strike 3 II*, at *1. "Although [Plaintiff's] expert found no evidence of infringement on the computer [Defendant] identified in discovery," the stilted record is the result of Defendant's own "obstructive tactics in discovery." *See id.* He may not now cry wolf.

### 5. Rightsholders Should Not Be Deterred from Prosecuting Mass, Anonymous, Online Infringement

Defendant rightfully cages this prong solely to deterrence as there is no evidence that Defendant paid (or will pay) his counsel and will require compensation. *See* D.E. 52-1, at 26–28 (recounting counsel's refusal to produce fee agreements). He decries Plaintiff's "templated pleadings." D.E. 63-1, at 9. The law is rife with forms and templates, and pleadings, "a short and plain statement," Fed. R. Civ. P. 8(a)(2), need not be biographical tomes. Recognizing these efficiencies in other cases, courts have consistently upheld the practice.[9] Critically, nowhere does

---

[9] *See, e.g.*, *PTG Nevada, LLC v. Wilson*, No. 15-2017, 2016 WL 7377112, at *3 (D. Or. Dec. 20, 2016) (granting rightsholder's motion for fees while noting that "[t]he handling of these matters has become somewhat *pro forma* with the filing of complaints against unidentified IP addresses in which the plaintiffs recite similar

Defendant point to an actual misstatement in Plaintiff's pleadings, and, to the contrary concedes that its present "little downside risk of inaccurate [information] or improper due diligence."  D.E. 63-1, at 9.

The fact remains that the Federal Rules direct the "parties" to conduct their cases "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1. Consonant with this Rule, Plaintiff's pleadings conserve the Court's and parties' resources. Thus, there is nothing to deter.[10]

### 6. Plaintiff's Litigation Serves the Ends of the Copyright Act

Finally, Defendant largely ignores the final factor, circularly stating that the Copyright Act should not be used to "pressure non-infringers with false claims of other infringements." D.E. 63-1, at 8. This hyperbole is unhelpful. While the Act "is intended to motivate the creative activity of authors and inventors by the provision of a special reward," *see Sony Corp. of Am. v. Universal City Studios*, Inc., 464 U.S. 417, 429, 104 S. Ct. 774, 782, 78 L. Ed. 2d 574 (1984), the question here is "whether a successful *defense* of the action furthered the purposes of the Act, not whether a

---

factual scenarios of infringing activity"); *HB Prods., Inc. v. Faizan*, No. 19-487, 2022 WL 2529864, at *7 (D. Haw. June 7, 2022), *report and recommendation adopted*, No. 19-487, 2022 WL 2340694 (D. Haw. June 29, 2022) (reducing rightsholder's award of fees by 10% for "tasks that are clearly template-based and similar to those in other actions in this district court").

[10] Defendant also contends that an award of fees would deter Plaintiff from "manipulating" data, D.E. 63-1, at 8, but as explained, *see generally* Decl. Fernandez, this assessment of the data is erroneous. If anything, an award of fees would incentivize defendants to submit defective reports at the eleventh-hour.

*fee award* would do so." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003) (citing *Fogerty*, 510 U.S. at 527) (emphasis original); *see Fogerty*, 94 F.3d at 560 (on remand) (observing successful defenses "do not always implicate the ultimate interests of copyright").

The Ninth Circuit has addressed this factor head on. Acknowledging that "piracy of copyrighted materials on peer-to-peer networks can have severe financial consequences for copyright holders," *Glacier Films*, 896 F.3d at 1035, it held that "[i]nherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional infringement suit against one who wrongfully copies.'" *Id.* at 1041 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 963, 125 S. Ct. 2764, 2794, 162 L. Ed. 2d 781 (2005) (Breyer, J., concurring). Cases like these, "fit[] squarely within the tradition of copyright enforcement." *Id.* While litigants may stray too far from the purpose, *cf. Cobbler Nevada*, 901 F.3d at 1149 (demeriting the rightsholder's "decision to name Gonzales as the defendant, even after concluding that Gonzales was not 'a regular occupant of the residence or a likely infringer'"), there is no exonerating counterfactual in this matter to suggests that Plaintiff did anything other than enforce its rights.

Accordingly, the *Fogerty* factors weigh against Defendant and his request for an award of costs and fees.

### C. The Requested Fee Award is Unreasonable and Unsupported

Even where a party establishes the right to a fee award, "[i]t remains for the district court to determine what fee is reasonable." *Hensley*, 461 U.S. at 433. "The initial determination of reasonable attorney's fees is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate," *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987) (citation omitted), which "may then be adjusted on the basis of 'other considerations.'" *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citation omitted). Defendant's fee request is unreasonable as there are severe defects with defense counsel's calculation, both because the requested rate is excessive and because counsels' billing records include numerous entries that violate Local Rule 54.2 and are otherwise improper.

### 1. Doe's Request for Hourly Rates are Not Reasonable

The *Kerr* factors–omitted from Defendant's Motion–counsel towards a reduction of any award. The Ninth Circuit "requires that courts reach attorneys' fee decisions by considering some or all of twelve relevant criteria[.]" *See Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). Those are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service

16

properly, (4) the preclusion of other employment by the attorney due to
acceptance of the case, (5) the customary fee, (6) whether the fee is
fixed or contingent, (7) time limitations imposed by the client of the
circumstances, (8) the amount involved and the results obtained, (9) the
experience, reputation, and ability of the attorneys, (10) the
'undesirability' of the case, (11) the nature and length of the
professional relationship with the client, and (12) awards in similar
cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (citation omitted).

Defendant failed to address these factors and thus waives any arguments in
favor of them. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990);
*Durham v. County of Maui*, 742 F.Supp.2d 1121, 1126 n.2 (D. Haw. 2010) (refusing
to address argument raised for first time in reply pursuant to *Eberle*). Absence of
evidence and arguments aside, the docket evinces that defense counsel did not
perform work justifying their proposed rates.

The bulk of the matter was devoted to Defendant's defective discovery
responses. To encapsulate Defendant's lack of diligence and candor, despite being
represented by multiple attorneys, not one would confirm whether Defendant had
identified all of his hard drives, which were at the heart of the dispute. *See* Fed. R.
Civ. P. 33(b)(3) ("Each interrogatory must . . . be answered separately and *fully* in
writing under oath.") (emphasis added); *id.* 34(b)(2)(C) ("An objection must state
whether any responsive materials are being withheld on the basis of that objection.").
Rather than litigate Defendant's innocence, counsel frustrated any discovery into his

liability. Defense counsel should not be awarded for their deliberate obfuscation. *Cf.*
*Strike 3 II*, at *1.

Finally, experience with Mr. Edmondson and Mr. French demonstrate that
they generally charge their clients less than the lodestar amount. Decl. Thompson,
at ¶15. In fact, in past cases, they have entered into "fee split" agreements, which
allows the client to receive a portion of any fee award granted to the defendant. *See*
*id.* Plaintiff does not know if such an arrangement exists in this matter because
defense counsel refused to produce their fee agreements. D.E. 52-1, at 14. These
histories, however, indicate that the work performed by Mr. Edmondson and Mr.
French is substandard, and thus should be assessed at a lower rate.

The Court, of course, need not accept the inflated rate present by counsel, but
can rely on its own knowledge and experience of what constitutes a reasonable fee
in this District.  *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  To
that end, Plaintiff respectfully notes that courts routinely approve rates that are
approximately 30% to 60% lower than s counsel's stated fee of $475/hr. as a
"reasonable" hourly rate. *ME2 Productions, Inc. v. Pumaras*, No. 17-78, 2017 WL
4707015, at 8 (D. Haw. Oct. 19, 2017) (finding that a rate of $250/hr. was
appropriate for Mr. Culpepper in a BitTorrent copyright case and was the prevailing
market rate) (collecting cases). Moreover, when determining a reasonable hourly
rate, the Court should also take note of the fact that defense counsel *lost every*

*substantive motion* in this matter. *See BWP Media USA, Inc. v. Busca Corp.*, No. 13-2629, 2014 WL 12856014, at *7 (S.D. Cal. 2014) (reducing rate based on the "average quality of work demonstrated").

### 2. Defense Counsels' Time Was Not Reasonably Expended

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). The Court possesses "considerable discretion" in determining what is appropriate, *see Webb v. Ada Cnty.*, 195 F.3d 524, 526 (9th Cir. 1999), and "should exclude from lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 433). Indeed, even "absent" objections, the Court is "required to independently review [a party's] fee request," *Gates*, 987 F.2d at 1401, and must not to "accept uncritically . . . counsel's representations concerning the time expended." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.1984)).

Starting with the hours expended, as outlined in the charts prepared and annotated with Plaintiff's objections pursuant to Local Rule 54.2(e)(2), *see* D.E. 61-

14, to the extent Defendant is entitled to recover anything, most of counsels' claimed costs and fees are invalid. Those objections fall into four broad categories:

### a. Violations of L.R. 54.2(f)(3)

This objection refers to counsels' failure to fully or comprehensively articulate the nature of the event or services being bill for in a particular entry. "The party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." L.R. 54.2(f)(3). This objection also encompasses issues with "block billing." "Block billing is not permitted, and block billed entries may be partially or completely excluded by the court." L.R. 54.2(f)(3); *see Masuda-Cleveland v. Life Ins. Co. of N. Am.*, No. 16-57, 2021 WL 3683911, at *3 (D. Haw. Aug. 19, 2021) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)) ("District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.").

Counsels' hours are replete with entries in block billing format where counsel lumped different tasks into a single entry and commingled that work with paralegal tasks, clerical non-legal work, or other items that are not billable to a client. Plaintiff identified these defects and its objections to counsel. Decl. Thompson, at ¶¶9-10. Defense counsel rejected all of Plaintiff's objections and refused to edit a single entry. *See* D.Es. 63-9, 63-10, 63-11. Because those items were and remain block-

billed, neither Plaintiff nor the Court can discern the amount of time spent so that it may be properly deducted. *See Young v. Wolfe*, No. 7-3190, 2017 WL 3184167, at *5 (C.D. Cal. 2017). The Court should reduce or exclude all hours that were block-billed.

### b. Excessive Billing

"Counsel must exercise proper billing judgment and exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Skydiving School, Inc. v. GoJump America, LLC*, No. 23-292, 2024 WL 4988884, at *8 (D. Haw. Sept. 30, 2024), *report and recommendation adopted*, No. 23-292, 2024 WL 4892574 (D. Haw. Nov. 26, 2024) (quoting *Hanover Ins. Co. v. Anova Food, LLC*, No. 14-00281, 2017 WL 2524825, at *4 (D. Haw. June 9, 2017). "Additionally, 'hours expended on unrelated, unsuccessful claims should not be included in an award of fees.'" *Id.* (citation omitted).

Many of the requested hours were spent on improper litigation conduct and unnecessary motion practice that needlessly multiplied proceedings. *Signature Networks, Inc. v. Estefan*, No. 3-4796, 2005 WL 1249522, at *5 (N.D. Cal. 2005). These hours were expended drafting (and unsuccessfully defending) objection-only responses to discovery, amending initial disclosures to actually identify pertinent witnesses, and wasteful motion practice where Defendant unsuccessfully defended his motion to quash. There are also significant hours associated with creating a

standard retainer agreement and a standard stipulated protective order, neither of which have been provided to or reviewed by Plaintiff. *See* Decl. Thompson, at ¶12.

### c.  Improper Bill for Clerical Tasks

"Attorney time entries must be reduced to the extent they reflect billing for clerical or ministerial work." *Skydiving School*, 2024 WL 4988884 at *7 (citation omitted). "Clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." *Id.* (citation omitted). Secretarial and clerical activities are not recoverable.  *See Nadarajah v. Holder,* 569 F.3d 906, 921 (9th Cir. 2009); *Santiago v. Equable Ascent Fin.*, No. 11-3158, 2013 WL 3498079, at *3 (N.D. Cal. 2013); *Jones v. Corbis Corp.*, No. 10-8668, 2011 WL 4526084, at *5 (C.D. Cal. 2011), *aff'd*, 489 Fed. Appx. 155 (9th Cir. 2012).

The Court should reduce all hours for work that is "clerical in nature" such as calendaring deadlines, filing documents, confirming papers were filed, organizing files, and electronically filing documents which are not properly billable at an attorney or paralegal rate.

### d.  Violations of *Rimini*

Lastly, "some of [Defendant]'s requested costs are not recoverable under 28 U.S.C. §§ 1920 and 1821." *Faizan*, 2022 WL 2529864, at *5 n.3 (citing *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 139 S. Ct. 873, 878 203 L. Ed. 2d 180 (2019)). "[Sections] 1821 and 1920 in turn do not authorize an award for expenses

22

such as expert witness fees [and] e-discovery expenses . . . ." *Rimini*, 586 U.S. at

341; *see Bayoh v. Afropunk LLC*, No. 18-5820, 2021 WL 736733, at *2 (S.D.N.Y.

Feb. 23, 2021). Incredibly, Mr. Edmondson attempts to recover the "[c]osts for

imaging Media" *twice*: first in his invoice for costs, and then, again in his invoice of

lodestar fees. Despite raising issues with *Rimini* and double-billing, Mr. Edmondson

has refused to adjust either entry.

### 3. Mr. French's Fees Should Be Categorically Excluded

Additionally, Plaintiff objects to all fees incurred by Mr. French as he has not

entered an appearance in this matter.  The Ninth Circuit recently "agree[d]" that

"work performed for *pro se* [d]efendant[] . . .should not have been included in the

lodestar analysis." *See Gaede v. Delay*, No. 23-35217, 2024 WL 957490, at *2 (9th

Cir. Mar. 6, 2024), *cert. denied*, No. 23-1252, 2024 WL 4426617 (U.S. Oct. 7, 2024).

A close inspection of Mr. French's services shows little–if any–contribution to the

integral attorney work product, and, instead, shows basic reviews and discussions of

Defendant's *pro se* Answer. *See* D.E. 25. Counsel who refuse to risk their skin by

signing filings, *see* Fed. R. Civ. P. 11(a), have shown little interests in advocacy, let

alone an entitlement to fees.[11]

---

[11] Mr. French is aware of this requirement and was ordered to enter a *pro hac vice*
appearance in *Adaire*, No. 20-676, at D.Es. 65, 68, 77.

As *pro se* activities are generally unrecoverable, request for attorney's fees on vague consolations on *pro se* work equally fall outside the ambit. *Cf. Virchinsky v. Mut. of Omaha Ins. Co.*, No. 12-25, 2012 WL 527843, at *2 (D. Haw. Feb. 16, 2012), *report and recommendation adopted*, No. 12-25 2012 WL 777307 (D. Haw. Mar. 8, 2012) ("Because Plaintiff is representing himself and proceeding pro se, the Court finds that he is not entitled to recover attorney's fees.") (citing *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("[A] pro se litigant who is not a lawyer is not entitled to attorney's fees").

With appropriate reductions to the lodestar calculus and adjustments to costs, if counsel is to recover anything, it should be reduced as follows:

| Timekeeper | Adjusted Rate ($/Hour) | Adjusted Hours | Adjusted Total |
|---|---|---|---|
| Edmondson, J Curtis (JCE) | $250 | 35.62 | $8,905 |
| French, Leonard (LJF) | $250 | 0 | $0 |
| Pitts, Alicia L. (ALP) | (waived) | (waived) | (waived) |
| Severson, Nicholas J. (NJD) | (waived) | (waived) | (waived) |
| Sasaki, Morgan K. (MKS) | $250 | 42 | $10,500 |
| **TOTAL ADJUSTED FEES:** | | 77.62 | $19,405 |
| Adjusted Non-Taxable Expenses: | | | $0 |
| **TOTAL:** | | | **$19,405** |

24

## V.    CONCLUSION

Defense counsel should not be awarded their costs and fees in this matter, or, at most, only recover a significantly reduced award. Unfortunately, Mr. French and Mr. Edmondson have taken their obstructive tactics from coast-to-coast, and discovery sanctions in *Adaire* have not dented their resolve. Not content just to waste the parties' and Court's resources over myriad discovery abuses, in their rush to collect their fees, they have not only revealed Defendant's identity–information that Plaintiff has protected and sealed from the start of the litigation–they have published lists of downloads from Defendant's IP address. *Cf. Malibu Media, LLC v. Doe*, No. 13-536, 2013 WL 6579338, at *1 (E.D. Wis. Dec. 12, 2013) (sanctioning party for publishing list of "titles [that] are . . .  pornographic"). If anything significant is to come from this Motion, let it be a condemnation of defense counsels' tactics and lack of diligence so that other defendants are not so readily exploited.

DATED: Honolulu, Hawaii, February 3, 2025.

/s/ Christian L. Kamau
CHRISTIAN L. KAMAU

/s/ Jeremy J. Thompson
JEREMY J. THOMPSON

Attorneys for Plaintiff
STRIKE 3 HOLDINGS, LLC