IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Strike 3 Holdings LLC,<br><br>        Plaintiff,<br><br>  vs.<br><br>John Doe Subscriber assigned IP address 75.85.3.187,<br><br>        Defendant. | CASE NO. 1:23-cv-00178-JAO-RT<br><br>**DECLARATION OF JESSICA FERNANDEZ IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, Jessica Fernandez, declare as follows:

    1.    I am over the age of 18 and am otherwise competent to make this declaration. I am an in-house counsel for plaintiff Strike 3 Holdings, LLC and have worked on this matter from its inception.

    2.    I have worked for Strike 3 Holdings, LLC for over six years. In that time, I have worked as in-house counsel, and I also represent Strike 3 Holdings in federal litigation including in the District Court of Colorado and the District Court of Maryland.

    3.    I make this Declaration in Support of Plaintiff's Response in Opposition to Defendant's Motion for Attorneys' Fees and Costs. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, I could and would competently testify thereto.

1

4.      I have reviewed the Declaration of Eric Fruits, PhD, in Support of Defendant's Motion for Attorney Fees. D.E. 63-6. Although the declaration is not dated, contemporaneous cites throughout that paper suggests that it was completed around January 20, 2025, *cf. id.* at n. 6, the same day the Defendant's Motion to Attorneys' Fees and Costs was filed. D.E. 63 *et seq.* In any event, Dr. Fruits' declaration was not produced during discovery or during the post-judgement timeline prescribed by Local Rule 54.2(d).

5.      Dr. Fruits criticized "inexplicable discrepancies" in the two Excel files of Plaintiff's "Additional Evidence"–either evidence of BitTorrent downloads of third-party works or Plaintiff's works that are not included in the claim, *see Jorge Arco's Expert Report*, D.E. 63-4, at ¶¶58–62 (Cross-Reference Tool)–and concluded that Plaintiff's "data is manipulated[.]" This conclusion is unequivocally false.

6.      Mr. Arco's expert report details how the Cross-Reference Tool works to capture BitTorrent infringement. *Id*. at ¶¶ 58–63. Relevantly, the Cross-Reference Tools "crawl[s] popular torrent websites," "locate[s] torrent files," and "subsequently download[s] the torrent information from these websites." D.E. 63-4, at ¶60. In a nutshell, it observes what IP addresses are exchanging what files and records that information. The record of those exchanges is what Plaintiff calls its "Additional Evidence."

2

7.      "The Cross Reference Tool *repeatedly* requests a list of as many registered peers as possible within a given swarm." *See id.* (emphasis added). That is, the Additional Evidence is constantly updating with new entries for an IP address when that information is downloaded.

8.      As stated in the First Amended Complaint ("FAC"), *see* D.E. 14, at ¶59, the Additional Evidence contained "hits" (what Dr. Fruits refers to as "unique hashes") for 3,529 different works. This number was based on an Additional Evidence report I generated on or around September 1, 2023. The report contained hits for both the Cross-Reference Tool and IPP International Ltd. ("IPP").

9.      Plaintiff pays IPP a fee every month to access their data for redundancy.  Plaintiff did *not* use any of IPP's data to connect Defendant to the infringement in the FAC. That being said, Dr. Fruits fails to point out the elephant in the room–that an independent, third-party BitTorrent infringement scan also captured Defendant's IP address infringing multiple works, including Plaintiff's works. IPP's scan has been relied on in a BitTorrent trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013).  It also was relied on in a case where terminating sanctions were entered against defendants. *Malibu Media, LLC v. Tashiro*, No. 13-205, 2015 WL 2371597, at *1 (S.D. Ind. May 18, 2015), *report and recommendation adopted*, No. 13-205, 2015 WL 3649359 (S.D. Ind. June 11, 2015).

3

10. The first report produced in discovery, BATES 5, was generated on April 9, 2024. It was produced along with Plaintiff's initial disclosures. That report contained data from both VXN Scan *and* IPP. It also included "multiple hits" for a work (what Dr. Fruits refers to as "total records"), which total 4,572. Although Plaintiff did not rely on IPP's data or the multiple hits, it produced this data nonetheless because of its obligation to produce "*all* . . . electronically stored information . . . in its possession, custody, or control" that "*may* use to support its claims[.]" *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).

11. Since BATES 5 was generated after the initial report relied on for the FAC, it contained a few additional hits recorded by the Cross-Reference Tool, which is why the volume is slightly higher than the one reported *supra*. *Contra* D.E.63-6, at ¶12.

12. During discovery, Defendant complained that Plaintiff had not disclosed IPP in its initial disclosures. Plaintiff informed Defendant that it had no intention of calling IPP as a witness in this case, nor did Plaintiff view it as necessary to introduce its recorded infringement into evidence.

13. To avoid future controversy, Plaintiff first amended its initial disclosures to include IPP.

14. Yet even after this, defense counsel insisted that the disclosure was insufficient. To make it clear that Plaintiff did not intend to rely on IPP's data, it

4

then generated a new and separate report, BATES 13, on August 19, 2024, which did not include hits from IPP.

15. To further clarify what data Plaintiff intended to rely on, BATES 13 also filtered out multiple hits so that only a single hit/unique hash appeared for any given work. *Cf. id.* at ¶16 ("BATES 5 lists all alleged instances while BATES 13 lists only a single instance"). Dr. Fruits does not state how filtering the data this way is a "manipulation" of Plaintiff's Additional Evidence, let alone renders it unreliable.[1]

16. Dr. Fruits concedes as much, *see id.* at ¶13, but avers that there are further discrepancies. "Most troubling, BATES 13 excludes every alleged infringing work listed in Exhibit A to the complaint." *Id.* at ¶14. Dr. Fruits omits a key point from his analysis: the "work[s] listed in Exhibit A to the complaint" are not listed in BATES 5 either. That is because data from the works in Exhibit A are not included in the Additional Evidence reports, but rather in a separate report produced to Defendant as BATES 10.

17. Dr. Fruits also states that BATES 13 "excludes several other Strike 3 titles that are included in BATES 5," *id.* at ¶15, but this was also a result of the filtering Plaintiff applied. The "exclude[d]" works were later recorded by VXN

---

[1] Instead, he merely states that "it seems odd that a single person would undertake the time, effort, and disk space to completely download a single season of a reality series 15 times over the space of 36 days." D.E. 63-6, at ¶18.

Scan, not just the Cross-Reference Tool, and thus are no longer displayed in the Additional Evidence.

18. The "discrepancies" and "manipulation" of data in Plaintiff's Additional Evidence come down to the mere filtering of data (the original of which is still available to Defendant and Dr. Fruits in BATES 5). It is telling that of the thousands of hits that Dr. Fruits was able to review, he simply pointed to omissions, but not to any actual inconsistencies in the dates, files, or hashes. That is because the data between BATES 5 and BATES 13 is consistent, sound, and reliable. Moreover, had Plaintiff had the opportunity during discovery to address these issues.

19. Finally, Dr. Fruits fails to acknowledge that Defendant's Internet Service Provider correlated the infringing IP address in this case to Defendant. Therefore, the universe of potential infringers is limited to only those that had access to Defendant's Internet. The well documented infringement in this case went on for over a year. Whoever infringed, had long-term consistent access to Defendant's Internet. With this foundation, considering the data from the Cross-Reference Tool, this individual would also have to have the same tastes in adult content (which Defendant admittedly was boasting about on social media), the same taste in specific comedians, and the same taste in specific sports. Defendant was also caught actively posting about piracy through his Reddit account which he

deleted in the middle of discovery. Defendant has not introduced any evidence of wi-fi hacking, nor anyone else that had the same interests as him and used his Internet during the time of infringement. The chances of this case being a "false positive" is, statistically, very unlikely.

20. All infringement from IP address 75.85.3.187 stopped being recorded around June 22, 2023.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of February, 2025.

> /s/ Jessica Fernandez
> Jessica Fernandez